UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:21-cv-14290-Cannon/McCabe

BRIAN A. FUNDERBURK,

 Plaintiff,

v.

WILLIAM SNYDER,
in his official capacity as Sheriff of the
Martin County Sheriff's Office, and
STEVEN O'LEARY,
in his individual capacity,

 Defendants.
_____/

## REPORT AND RECOMMENDATION ON DE 48

THIS CAUSE comes before the Court on a Motion for Summary Judgment ("Motion") (DE 48) filed by Defendant Steven O'Leary in his individual capacity, which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 63). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

**I. OVERVIEW**

This is a civil rights case arising from an arrest that took place on August 20, 2018. Plaintiff brings claims against William D. Snyder in his official capacity as Sheriff of Martin County and former Deputy Sheriff Steven O'Leary in his individual capacity. The Complaint alleges the following counts against O'Leary:

 Count II  Unnecessary/Excessive Use of Force against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983;

 Count IV  False Arrest or Imprisonment against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983; and

      Count VI      Procedural Due Process Civil Rights Claim against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983.

(DE 1 at 6, 9, 11).

Pursuant to Federal Rule of Civil Procedure 56, O'Leary now moves for summary judgment solely as to Counts IV and VI. O'Leary does not seek summary judgment as to Count II, the excessive force count.

## II.    SUMMARY JUDGMENT STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th

Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, courts must view the facts in the light most favorable to the non-moving party. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Courts must also resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ultimately, "the trial court may … deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

### III.   FACTS

At around 8:45 P.M. on August 20, 2018, Martin County Sheriff Deputies Steven O'Leary and Michael Coccaro responded to a residence to investigate an anonymous report of a domestic disturbance (DE 58-3 at 45, 56). The report indicated that somebody was "hollering and banging things around" (DE 58-7).

Although the dispatch report did not provide a precise address, both Deputies testified they located the residence based on "arguing" and "yelling" coming from the house (DE 58-3 at 53:5-7; DE 53-4 at 6). Plaintiff disputes this and testified that he and his girlfriend (hereafter "Girlfriend") were merely "talking" prior to the Deputies' arrival (DE 58-1 at 64:14). Likewise, Girlfriend testified that, although she had an argument with Plaintiff earlier in the day, she had no further arguments with Plaintiff that day, and she was not "yelling" prior to the Deputies' arrival (DE 58-2 at 26:1-8).

As the Deputies approached the house, they found Plaintiff sitting alone inside a front porch screened enclosure (DE 52 ¶ 11). From the front lawn, and still outside the screened enclosure,

the Deputies told Plaintiff they were there to investigate a domestic dispute (DE 58-1 at 206:17-18; DE 53-4 at 11:11-12). Plaintiff showed O'Leary his ID through the screen (DE 58-1 at 85:6-7). When O'Leary said he could not see the ID, Plaintiff suggested he redirect the flashlight from Plaintiff's face onto the ID so that O'Leary could see it (DE 58-1 at 85: 5-10).

The Deputies explained they needed to make sure everybody was okay inside the house, so Plaintiff tapped on the window, and Girlfriend came to the patio (DE 58-1 at 85:13-15; DE 58-2 at 28:15-17). Girlfriend told the Deputies she was "okay," that nobody needed help, and "you can see that I am fine" (DE 58-2 at 32:15-18, 72:14-20).

The Deputies dispute this. They testified that Girlfriend never came to the patio until after a supervisor arrived, so they were "unable to see the female at that point" (DE 58-3 at 72:15-18, 76:1-12; DE 53-4 at 15:19-24). As a result, they could not determine whether Girlfriend was physically safe, i.e., "whether there's marks" or whether "there were injuries to her person or not" (DE 58-3 at 76:9-10; DE 53-4 at 15:20-21).

At some point while Plaintiff spoke to the Deputies, Girlfriend heard O'Leary ask Plaintiff for his name (DE 58-2 at 73:10-12). At that point, Girlfriend told Plaintiff, "Just come in the house" (DE 58-1 at 87:23-25). Plaintiff agreed with Girlfriend's suggestion, so he got up from the patio couch and headed towards the front door of the house (DE 58-1 at 87:23-25, 88: 2-7).

At that point, O'Leary kicked in the screen door, grabbed Plaintiff, and slammed him onto the couch (DE 58-1 at 88, 90; DE 58-2 at 36, 39). O'Leary then placed Plaintiff under arrest for violating Fla. Stat. § 843.02, i.e., resisting an officer without violence by failing to identify himself (DE 58-3 at 89:21-89:7; DE 53-6). During the course of the arrest, Plaintiff suffered numerous injuries, including a broken jaw with facial fractures, loss of four teeth, stoma displacement, and a subconjunctival hemorrhage (DE 58 ¶ 47).

Thereafter, the State Attorney for the Nineteenth Judicial Circuit charged Plaintiff with several counts, including resisting an officer with violence in violation of Fla. Stat. § 843.01 (DE 53-8 at 12). On April 18, 2019, Plaintiff entered into a plea agreement, whereby he agreed to plead no-contest to this offense (DE 53-8 at 3-4, 6). A state court judge later accepted the plea and adjudicated him guilty of violating Fla. Stat. § 843.01 (DE 53-8 at 8; DE 53-9 at 1, 3, 8).

## IV.     DISCUSSION

O'Leary seeks summary judgment on several grounds, each of which the Court will address in turn.

### A.      Qualified Immunity

O'Leary first urges the Court to enter summary judgment based on the doctrine of qualified immunity, which provides complete protection to government officials sued in their individual capacities so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up).

Courts decide qualified immunity as a question of law. *Courson v. McMillian*, 939 F.2d 1479, 1486-88 (11th Cir. 1991). When a defendant raises qualified immunity at the summary judgment stage, courts must view the evidence in the light most favorable to the plaintiff. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1313, 1315 (11th Cir. 2017) (noting that at summary judgment, the court "cannot simply accept the officer's subjective version of events, but rather

must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances."); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) ("At the summary judgment stage ... once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [the officer's] actions ... is a pure question of law.").

To be eligible for qualified immunity, a defendant must first establish that he was performing a "discretionary function" at the time of the alleged violation. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Here, all parties agree O'Leary was performing discretionary functions at the time of the alleged violations. *See Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015), *aff'd*, 663 F. App'x 894 (11th Cir. 2016) (finding that investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers).

Once a defendant has a made a showing of "discretionary function," the burden shifts to the plaintiff to demonstrate that the defendant is *not* entitled to qualified immunity. *Holloman*, 370 F.3d at 1264. In order to meet this burden, a plaintiff must satisfy a two-step test: (1) he must show the defendant committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the violation. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Both prongs of the test must be satisfied, and courts need not address them "in any particular order." *Williams v. Santana*, 340 F. App'x 614, 617 (11th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

As to the second prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Hamilton v. City of Jackson, Ala.*, 261 F. App'x 182, 186 (11th Cir. 2008) (cleaned up).  Put another way, a defendant must have fair notice of his conduct's unconstitutionality, derived from at least one of the following sources:

    (1)    the obvious clarity of constitutional or statutory language;

    (2)    principles set forth in case law, even though not tied to particularized facts; or

    (3)    fact-specific judicial precedents that are not fairly distinguishable.

*Lucibella v. Ermeri*, No. 20-82156-CIV, 2022 WL 910302, at *6 (S.D. Fla. Mar. 29, 2022) (citing *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008)).

With this standard in mind, the Court turns to the allegations here.  As set forth below, the Court finds that genuine issues of material fact preclude a summary judgment finding of qualified immunity on either count.

    **1.**    **Count IV – False Arrest**

Count IV alleges O'Leary violated the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  An arrest made without a warrant and without probable cause violates the Fourth Amendment and gives rise to a claim under 42 U.S.C. § 1983.  *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018).  Probable cause exists to make an arrest when law enforcement officers have facts and circumstances within their knowledge "sufficient to warrant a reasonable belief that a suspect has committed or was committing a crime."  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).  Probable cause must be measured objectively, based on the totality of the circumstances.  *See Henry v. City of Mt. Dora*, No. 5:13-cv-528, 2014 WL 5823229, at *11 (M.D. Fla. Nov. 10, 2014).

To overcome qualified immunity in a false arrest case, a plaintiff must do more than merely show lack of probable cause. A plaintiff must show the defendant lacked "arguable probable cause" to make an arrest. *See Moreshead v. Ott*, No. 08-80913, 2009 WL 5083425, at *4 (S.D. Fla. Dec. 23, 2009) ("Since Ott was performing a discretionary function, the burden shifts to Plaintiff to demonstrate that Ott violated clearly established constitutional law, to wit, an arrest without arguable probable cause."); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause.").

Arguable probable cause exists where a reasonable officer in the same circumstances and possessing the same knowledge as the defendant "could have believed" that probable cause existed to make the arrest. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Courts apply this standard because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Id.*; *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (noting that qualified immunity standard is broad enough to cover mistaken judgment). Like probable cause, arguable probable cause must be measured objectively, without regard to the officer's subjective intent or belief. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

The existence of arguable probable cause in any given case "depends on the elements of the alleged crime and the operative fact pattern." *Gates*, 884 F.3d at 1298 (quoting *Brown*, 608 F.3d at 735). In the instant case, O'Leary arrested Plaintiff for violating Fla. Stat. § 843.02, commonly referred to as "obstruction" or "resisting without violence." The statute provides:

> **Resisting officer without violence to his or her person.** Whoever shall resist, obstruct, or oppose any officer … in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree….

8

Fla. Stat. § 843.02; *see also C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009) ("[T]o support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.").

O'Leary testified that he arrested Plaintiff under § 843.02 because Plaintiff refused to identify himself (DE 58-3 at 88:21-89:7). Courts have repeatedly recognized that a suspect violates Fla. Stat. § 843.02, or that probable cause (or arguable probable cause) exists to support an arrest under this statute, when a suspect fails or refuses to identify himself *while lawfully detained*. *See Alli v. Green*, No. 5:20-cv-556, 2022 WL 3544317, at *10-11 (M.D. Fla. Aug. 18, 2022) (finding arguable probable cause to support § 843.02 arrest where suspect, inter alia, refused to identify himself during a *Terry* stop); *K.A.C. v. State*, 707 So. 2d 1175, 1177 (Fla. 3d DCA 1998) (affirming § 843.02 adjudication for a defendant who refused to identify himself to police during an investigatory stop). Absent a lawful detention, § 843.02 does not require citizens to identify themselves to law enforcement. *See, e.g.*, *A.F. v. State*, 912 So. 2d 374, 376 (Fla. 2d DCA 2005) ("Therefore, because the State failed to establish that A.F. gave a false name to a law enforcement officer while he was being lawfully detained, we reverse.").

As to lawful detention, the Eleventh Circuit has recognized that law enforcement officers may conduct a lawful *Terry* stop at a home, provided they have "exigent circumstances" to do so. *See Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015) ("[I]n the absence of exigent circumstances, the government may not conduct the equivalent of a *Terry* stop inside a person's home."). The Eleventh Circuit defines exigent circumstances as "situations in which the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *McClish v. Nugent*, 483 F.3d 1231, 1240-41 (11th Cir. 2007) (cleaned up). Exigent circumstances

9

include breaking up a violent fight, preventing the destruction of evidence, putting out a fire in a burning building, attending to a stabbing victim, rescuing a kidnapped infant, or pursuing a fleeing suspect. *Id.*; *see also United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983) (stating that exigent circumstances include "danger of harm to police officers or the general public").

Based on the above authorities, the Court cannot enter a qualified immunity summary judgment ruling in favor of O'Leary unless the undisputed facts show that a reasonable officer in O'Leary's position "could have believed" the following: (1) that exigent circumstances existed at the time O'Leary encountered Plaintiff, (2) that these exigent circumstances justified a "lawful detention," in the form of a homebound *Terry* stop, (3) that as a result of this lawful detention, Plaintiff was required to identify himself to O'Leary pursuant to Fla. Stat. § 843.02, (4) that Plaintiff, in fact, failed to identify himself, and (5) that Plaintiff's failure to do so amounted to probable cause for a violation of Fla. Stat. § 843.02.

The Court has reviewed the record here and finds that genuine issues of material fact prevent the Court from reaching these multiple conclusions. Most notably, material factual disputes remain as to the existence of exigent circumstances. As an example, both Deputies testified they located the residence based on "arguing" and "yelling" coming from the house (DE 58-3 at 53:5-7; DE 53-4 at 6:15-20). When combined with the details of the 911 call, i.e., "hollering and banging things around," this fact might reasonably have increased the urgency of the situation. Plaintiff disputes this fact, however, and claims he and Girlfriend were merely "talking" prior to the Deputies' arrival (DE 58-1 at 64:14). Girlfriend likewise testified that, although she had an argument with Plaintiff earlier in the day, she had no further arguments with Plaintiff that day, and she was not "yelling" prior to the Deputies' arrival (DE 58-2 at 26:1-8).

More importantly, both Deputies testified that Girlfriend did not come to the patio until after a supervisor arrived, so they were unable to determine whether she was injured (DE 58-3 at 76:3-4; DE 53-4 at 15:19-20). Girlfriend testified, in contrast, that she came to the patio, spoke to the Deputies, and told them she was "okay," that nobody needed help, and "you can see that I am fine" (DE 58-2 at 32:15-18, 72:14-20). This dispute bears heavily upon the existence or non-existence of exigent circumstances.

In addition, genuine issues of material fact remain as to whether Plaintiff failed to identify himself within the meaning of Fla. Stat. § 843.02. Plaintiff testified he showed his ID to O'Leary through the screened enclosure (DE 58-1 at 85:6-10). When O'Leary said he could not see it, Plaintiff directed O'Leary to use his flashlight (DE 58-1 at 85:6-10). The record is silent as to further facts regarding whether O'Leary did so, or whether it was possible or practical for him to do so.

When deciding qualified immunity at the summary judgment stage, courts must view the evidence in the light most favorable to the non-moving party. *Courson*, 939 F.2d at 1486-88. Where testimony differs, courts must assume the non-moving party's version to be correct. Applying that standard here, the Court recommends the Motion be denied as to Count IV. Material factual issues remain to be resolved before the Court can decide qualified immunity.

### 2. Count VI – Warrantless Entry into Home

Count VI alleges O'Leary violated Plaintiff's Fourth and Fourteenth Amendment rights by "entering into his residential premises" without a warrant (DE 1 ¶¶ 49, 52). Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). As a recognized exception to the warrant requirement, law

enforcement may enter a home when they have both probable cause *and* exigent circumstances. *Id.*

For the reasons discussed in section IV.A.1, the Court finds that genuine issues of material fact remain as to whether exigent circumstances existed to justify O'Leary's warrantless entry into the residence. At the summary judgment stage, the Court assumes Plaintiff's version of the evidence to be correct. The Court therefore recommends the Motion be denied as to Count VI. Material factual issues remain to be resolved before the Court can decide qualified immunity.

### B. Count IV – False Arrest & Collateral Estoppel

O'Leary next argues summary judgment should be entered on Count IV, alleging false arrest, under the doctrine of collateral estoppel. Specifically, O'Leary points out that Plaintiff pled no-contest in state court to the criminal charge of resisting an officer with violence, in violation of Fla. Stat. § 843.01 (DE 53-8, DE 53-9). Given this plea, O'Leary argues that collateral estoppel bars Plaintiff from bringing a claim under 42 U.S.C. § 1983 for false arrest.

The Court disagrees. Collateral estoppel does not apply when the prior criminal proceeding "did not necessarily resolve the civil issue under consideration." *Sconiers v. Lockhart*, 946 F.3d 1256, 1269 (11th Cir. 2020). For the doctrine of collateral estoppel to apply under Florida law, five elements must be present: "(1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated." *Criner v. State*, 138 So. 3d 557, 558 (Fla. 5th DCA 2014) (citations omitted).

In this case, Plaintiff seeks to prove, by way of Count IV, that O'Leary arrested him "without lawful authority" (DE 1 ¶ 41). In his previous state court criminal case, however, Plaintiff

pled no-contest to violating Fla. Stat. § 843.01 – an offense that does *not* require proof of an "unlawful" arrest. Instead, this statute makes it unlawful to use force against a police officer "even if the arrest [is] illegal." *State v. Davis*, 652 So. 2d 942, 943 (Fla. 5th DCA 1995); *see also State v. Espinosa*, 686 So. 2d 1345, 1347 (Fla. 1996) (noting that "courts have consistently read section 776.051(1), Florida Statutes (1995), in pari materia with section 843.01 to eliminate [the requirement] that [the arrest be legal] as to the offense of resisting arrest with violence"). Accordingly, Plaintiff's previous no-contest plea and his current civil suit do not present "identical" issues for purposes of collateral estoppel.

For the same reason, the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) does not bar Count IV. In *Heck*, the Supreme Court held that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his [prior underlying] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487; s*ee also Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007) ("[F]or *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction [or imprisonment] be logically contradictory.").

Here, O'Leary argues that a successful result in this § 1983 suit for false arrest would logically contradict Plaintiff's past no-contest plea to resisting an officer with violence in violation of Fla. Stat. § 843.01. The Court disagrees. Because § 843.01 applies even to *false* and *illegal* arrests, the Court finds no contradiction between Plaintiff's past no-contest plea and his efforts to pursue Count IV. The Court therefore rejects O'Leary's collateral estoppel and *Heck* arguments.

### C. Count VI – 42 U.S.C. § 1983 & the Florida Constitution

Finally, Count VI, which purports to allege a claim under 42 U.S.C. § 1983, also cites to Article 1, Section 12 of the Florida Constitution (DE 1 ¶ 50). As O'Leary points out, a plaintiff cannot bring a claim for money damages based on a violation of the Florida Constitution. *See, e.g.*, *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1191-92 (S.D. Fla. 2012) ("In Florida, no cause of action exists for money damages for a violation of a state constitutional right.") (cleaned up). Likewise, § 1983 creates a private cause of action against those who, under color of state law, violate the United States Constitution, not the Florida Constitution. 42 U.S.C. § 1983.

O'Leary moves for summary judgment based on these incorrect citations (DE 48 at 10-11). While the Court agrees these citations provide no basis for relief, the Court disagrees summary judgment should be entered. At the motion-to-dismiss stage, a complaint need not identify the correct legal theory so long as it alleges facts to support a claim. *See Mclean v. Carnival Corp.*, No. 22-23187, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023) ("Although the Plaintiff puts forward an incorrect legal theory for a claim of vicarious liability in both counts … the Plaintiff nonetheless pleads sufficient facts to support claims for vicarious liability in both counts."); *Funtana Vill., Inc. v. City of Panama City Beach*, No. 5:15CV282, 2016 WL 7638470, at *5 (N.D. Fla. Jan. 19, 2016) ("Also true is the fact that a complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.") (cleaned up). The same logic should apply at summary judgment. Accordingly, the Court declines to recommend summary judgment merely because Count VI erroneously cites to the Florida Constitution as a source of Plaintiff's cause of action.

### V. CONCLUSION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** that O'Leary's Motion (DE 48) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 27th day of March 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE