UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14290-CIV-CANNON/McCabe

**BRIAN FUNDERBURK**,

    Plaintiff,

v.

**STEVEN O'LEARY** and
**SHERIFF WILLIAM D. SNYDER**,

    Defendants.
_____/

## ORDER ACCEPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION AS TO DEFENDANT O'LEARY [ECF No. 71]

**THIS CAUSE** comes before the Court upon Defendant Steven O'Leary's Motion for Summary Judgment (the "Motion") [ECF No. 48].[1] On March 27, 2023, Judge Ryon M. McCabe issued a report recommending that Defendant's Motion be denied (the "Report") [ECF No. 71]. Defendant filed Objections to the Report [ECF No. 72]. The Court has reviewed the Report [ECF No. 71], Defendant's Objections [ECF No. 72], and the full record.[2] For the reasons set forth below, the Report [ECF No. 71] is **ACCEPTED**, and Defendant's Motion for Summary Judgment [ECF No. 48] is **DENIED**.

---

[1] For purposes of this Order, "Defendant" refers to Defendant Steven O'Leary. Defendant Sheriff William D. Snyder also filed a Motion for Summary Judgment [ECF No. 47], which will be addressed in a separate Order.

[2] Plaintiff neither filed objections to the Report nor responded to Defendant's Objections within the time allotted [ECF No. 71 p. 15].

CASE NO. 21-14290-CIV-CANNON/McCabe

**FACTUAL BACKGROUND**[3]

This case stems from Plaintiff's arrest by Defendant Steven O'Leary ("Defendant"), a former deputy sheriff with the Martin County Sheriff's Office ("MCSO"). As relevant here, Plaintiff argues that his arrest violated his Fourth Amendment rights because Defendant unlawfully entered his residence and arrested him without probable cause. The material facts viewed in the light most favorable to Plaintiff as the non-moving party are contained in the Report [ECF No. 71 pp. 3–5] and reiterated for context as indicated below.

On August 20, 2018, Defendant and another Deputy Sheriff Michael Coccaro ("Coccaro") arrived at Plaintiff's residence in Palm City, where Plaintiff resided with his girlfriend, Kelsey Carrick ("Kelsey") [ECF No. 52 ¶¶ 1–2; ECF No. 58 ¶ 6]. The deputies were responding to an anonymous 911 call during which the caller reported "domestic trouble" from neighbors in the parking lot who were "going back and forth to the house" and "hollering and banging things around" [ECF No. 58 ¶ 6]. This marked the first interaction between Plaintiff and Defendant [ECF No. 52 ¶ 7]. Plaintiff and Kelsey dispute the deputies' assertion that they identified the residence due to the sound of raised voices; Plaintiff and Kelsey testified that they were instead having a "back and forth conversation" with Kelsey located inside the house and Plaintiff sitting outside on his cellphone [ECF No. 49 ¶ 8; ECF No. 58 ¶ 8].

Regardless, when the deputies arrived, Defendant walked up to the screened-in front porch where Plaintiff was sitting on an "L-shaped couch" [ECF No. 52 ¶ 11; ECF No. 58 ¶ 10]. The deputies told Plaintiff that they were there to investigate a domestic dispute and asked to see his

---

[3] These facts are drawn from the parties' Joint Statement of Undisputed Facts [ECF No. 52], Defendant's Statement of Material Facts [ECF No. 49], Plaintiff's Response to Defendants' Statement of Material Facts [ECF No. 58], Defendant's Reply Statement of Material Additional Facts [ECF No. 60] and supporting exhibits. Wherever there is a factual dispute, the Court construes the record in the light most favorable to Plaintiff.

identification [ECF No. 49 ¶ 14]. Plaintiff showed Defendant his ID through the screen, but Defendant told him that he could not see the ID in the dark [ECF No. 58 ¶ 15; ECF No. 49 ¶ 15]. Plaintiff suggested that Defendant redirect the flashlight towards the ID [ECF No. 58 ¶ 15]. The deputies told Plaintiff that, in order to complete their report, they needed to make sure that everyone was okay; Plaintiff subsequently notified Kelsey that law enforcement was at the residence [ECF No. 58 ¶ 16]. Kelsey testified that she came outside and spoke with the deputies, telling them that she was "okay" and that everything was "good" [ECF No. 58 ¶¶ 16–17]. The deputies dispute that they ever spoke to or saw Kelsey prior to her coming outside when Plaintiff was later placed in the squad car [ECF No. 49 ¶ 15]. It is undisputed, however, that Kelsey told Plaintiff to come inside the house [ECF No. 49 ¶ 17; ECF No. 58 ¶ 17].

Plaintiff then got up from the couch and started to walk towards the front door of the home [ECF No. 58 ¶ 17]. At that point, Defendant entered the screened-in porch, though Defendant's method of entry is disputed [ECF No. 49 ¶¶ 18–19 (Defendant stated that he opened the unlocked screen door); ECF No. 58 ¶ 18 (Kelsey and Plaintiff testified that Defendant kicked the screen door open)]. Once Defendant entered the screened-in area, there was a scuffle between Plaintiff and Defendant; Plaintiff states that Defendant grabbed him "super aggressively" to prevent him from entering the front door [ECF No. 58 ¶ 19]. It is undisputed that Defendant wrestled Plaintiff before putting him into handcuffs [ECF No. 49 ¶ 20], though Plaintiff testified that Defendant also slammed Plaintiff on the couch where both deputies (O'Leary and Coccaro) struck him in the ribs, neck, and legs prior to Defendant handcuffing Plaintiff [ECF No. 58 ¶ 20]. Defendant then arrested Plaintiff for resisting an officer without violence by failing to identify himself, in violation of Fla. Stat. § 843.02 [ECF No. 49 ¶ 21; ECF No. 58 ¶ 21]. Both deputies took Plaintiff, in handcuffs, to the patrol car, kicking, elbowing, and hitting Plaintiff as they did so [ECF No. 58 ¶¶ 27–28; ECF No. 49 ¶ 27]. Plaintiff claims that Defendant grabbed him by his head from behind and

punched him in the face nine or ten times while Plaintiff was seated in the back of the patrol car [ECF No. 52 ¶ 39]. Sometime during this interaction, Plaintiff's colostomy bag became dislodged [ECF No. 58 ¶ 28]. After his arrest, the deputies took Plaintiff to the jail first, then to the hospital for treatment, and then back to the jail [ECF No. 52 ¶ 40]. During the course of the arrest, Plaintiff suffered several injuries, including a broken jaw, loss of four teeth, stoma displacement, and bleeding in his eye [ECF No. 58 ¶ 47].

As a result of his arrest, Plaintiff was charged in the Nineteenth Judicial Circuit with several charges, including resisting an officer with violence [ECF No. 58 ¶ 42]. Plaintiff pled no contest to the charge of resisting an officer with violence, though the plea agreement did not specify the actions that formed the factual basis for the plea [ECF No. 58 ¶¶ 42–43; ECF No. 49 ¶ 41 (undisputed that Plaintiff pled no contest to resisting an officer with violence)]. Plaintiff was adjudicated guilty of the charge, which he understood to be related to his interactions with Deputy Coccaro only [ECF No. 58 ¶ 44; ECF No. 49 ¶ 43 (undisputed that Plaintiff was adjudicated guilty)]. In April 2019, Plaintiff was sentenced to 16 months in prison [ECF No. 49 ¶ 43; ECF No. 58 ¶ 44].

**RELEVANT PROCEDURAL HISTORY**

On July 15, 2021, Plaintiff filed a six-count Complaint [ECF No. 1]. As relevant here, the Complaint asserts claims under 42 U.S.C. § 1983 against Defendant in his individual capacity, alleging as follows: (1) Defendant's arrest of Plaintiff violated Plaintiff's Fourth Amendment right "to be free from seizure and arrest in the absence of probable cause, lawful authority, or consent" [ECF No. 1 ¶¶ 41–43] (Count IV – False Arrest or Imprisonment Against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983); and (2) Defendant unlawfully entered Plaintiff's residence in violation of the Fourth Amendment and Article 1, Section 12 of the Florida Constitution

CASE NO. 21-14290-CIV-CANNON/McCabe

[ECF No. 1 ¶¶ 49–53] (Count VI – Warrantless Entry Claim Against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983).[4]

On January 10, 2023, Defendant moved for summary judgment on Counts IV and VI of Plaintiff's Complaint [ECF No. 48]. The Court referred the Motion to Magistrate Judge McCabe for a Report and Recommendation [ECF No. 37]. The Report is ripe for adjudication [ECF Nos. 71, 72].

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

---

[4] Defendant is also named in Count II of the Complaint. Count II asserts that Defendant is liable pursuant to 42 U.S.C. § 1983 in his individual capacity for using constitutionally excessive force in his arrest of Plaintiff, resulting in physical injuries to Plaintiff [ECF No. 1 ¶¶ 32–35] (Count II – Unnecessary/Excessive Use of Force Against O'Leary, Individually, Cognizable Under 42 U.S.C. § 1983). Defendant seeks summary judgment only on Counts IV and VI, however [ECF No. 48 p. 1].

5

## DISCUSSION

The Report recommends, as an initial matter, that the Court deny Defendant's motion for summary judgment insofar as Defendant seeks a determination of qualified immunity on the false arrest and warrantless entry counts (Counts IV and VI) [ECF No. 71 pp. 5–12]. The Report then determines that Plaintiff's no-contest plea to the criminal charge of resisting an officer with violence, *see* Fla. Stat. § 843.01, does not operate to bar Count IV, Plaintiff's false arrest claim, under principles of collateral estoppel. And finally, the Report concludes that Plaintiff's erroneous request for money damages under the Florida Constitution in Count VI does not warrant wholesale judgment in favor of Defendant on that count. Upon review, the Court agrees with these conclusions, for the reasons stated below, with one slight clarification as to the money-damages issue on Count VI.

### A. Report and Recommendation

With regard to the false arrest count (Count IV), the Report correctly evaluates whether Defendant had arguable probable case to arrest Plaintiff for resisting an officer without violence under Florida law, Fla. Stat. § 843.02—the charge for which Plaintiff was initially arrested by Defendant [ECF No. 71 pp. 9–11]. Arguable probable cause exists under Section 843.02 if a suspect fails or refuses to identify himself while lawfully detained [ECF No. 71 p. 9 (citing cases); *see also Alston v. Swarbrick*, 954 F.3d 1312, 1319 (11th Cir. 2020) (noting that a violation of Fla. Stat. § 843.02 has two elements, first, that a law enforcement officer was engaged in the lawful execution of a legal duty, and second, that the suspect resisted or obstructed the law enforcement officer in performing that legal duty). In this case, based on a review of the factual record construed in the light most favorable to Plaintiff, the Report concludes that genuine issues of material fact remain concerning whether Defendant had arguable probable cause to believe that Plaintiff was in violation of Fla. Stat. § 843.02—thus preventing a determination of qualified

immunity at this juncture [ECF No. 71 p. 10]. Those material disputes of fact—un-responded to by Defendant in his objections [ECF No. 72]—concern, for example: (1) whether Plaintiff was lawfully detained by Defendant after Defendant spoke to Kelsey and verified (according to Plaintiff) that there was no ongoing domestic dispute and that she was not hurt; and (2) whether Plaintiff holding his ID up to the porch screen in the dark was sufficient to identify himself to Defendant. Those factual disputes are material to the question of a lawful detention (and more specifically, to the question of exigent circumstances justifying a lawful detention of Plaintiff) and to Plaintiff's resistance/obstruction—both matters material to Plaintiff's claim that he was falsely arrested for resisting without probable cause.

With regard to the warrantless entry count (Count VI), the Report correctly explains that a warrantless entry into a home violates the Fourth Amendment absent a recognized exception to the warrant requirement—the only such exception relevant here being exigent circumstances. And then, for the same reasons stated above concerning the genuine issues of material fact as to exigent circumstances, the Report declines to decide the question of qualified immunity on summary judgment.

The Report further declines to find that Plaintiff's no-contest plea to resisting with violence, in violation of Fla. Stat. § 843.01, operates to bar Plaintiff's false arrest claim for resisting without violence, in violation of Fla. Stat. § 843.02. As the Report explains, given the difference in the elements of proof for each of those offenses, *see State v. Espinosa*, 686 So. 2d 1345, 1347 (Fla. 1996), the two cases do not present identical issues sufficient to bar Plaintiff's claims, either under principles of collateral estoppel or the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) [ECF No. 71 pp. 12–13].

Finally, the Report recommends that, although Plaintiff's request for money damages under the Florida Constitution in Count VI is improper, the Court should follow the logic applied at the

motion to dismiss stage and decline to award Defendant summary judgment "merely because Count VI erroneously cites to the Florida Constitution as a source of Plaintiff's cause of action" [ECF No. 71 pp. 13–14].

### B. Defendant's Objections to the Report

Defendant raises the following three objections to the Report: (1) the Report "failed to determine whether the circumstances of the instant case were clearly established" for purposes of the qualified immunity analysis [ECF No. 72 pp. 1–2]; (2) the Report failed to address Defendant's argument "that a claim for false arrest is barred if it is supported by probable cause for *any* offense" [ECF No. 72 pp. 2–3 (emphasis in original)]; and (3) the Report erred in applying a standard applicable to a motion to dismiss at the summary judgment stage [ECF No. 72 p. 3].

### C. Discussion

The Court addresses each of Defendant's objections in turn, ultimately finding no basis to disturb the Report save for a clarification on Count VI.

***First***, the Court agrees with the Report's conclusion that genuine issues of material fact surrounding the night of Plaintiff's arrest preclude a finding at this juncture that Defendant is entitled to qualified immunity on the false arrest and warrantless entry claims. Defendant does not challenge the Report's recitation of the material facts construed in the light most favorable to Plaintiff. Instead, Defendant argues, in cursory fashion, that the Report failed to consider whether the law was clearly established sufficient to warrant qualified immunity [ECF No. 72 pp. 1–2]. But courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And that is what happened here, appropriately, given the genuine disputes of material fact about what happened and the requirement under Rule 56 to determine the relevant facts in the light most favorable to

Plaintiff. *See* Fed. R. Civ. P. 56(a). The Report correctly recognized that genuine disputes of material fact exist on this record; construed those facts in the light most favorable to Plaintiff; and ultimately declined to award Defendant qualified immunity on the factual record presented because accepting Plaintiff's version, without more, would be sufficient to yield a violation of clearly established Fourth Amendment law. Defendant's generalized objection reveals no error in this conclusion, either as to Count IV or Count VI. Indeed, if Plaintiff's version of events is true as to Kelsey's assurance to officers, prior to their entry onto the porch, that everything was fine and no one needed help—a version supported by Kelsey's deposition [ECF No. 58-2 p. 72:14–20]—then Defendant's warrantless entry into Plaintiff's home, without more facts supporting an ongoing exigency, would constitute a violation of clearly established Fourth Amendment law prohibiting a search of a home without a warrant or recognized exception to the warrant requirement. *See Walters v. Freeman*, 572 F. App'x 723, 728 (11th Cir. 2014) (affirming denial of qualified immunity, noting that facts did not justify a warrantless entry into plaintiff's home to investigate a domestic disturbance after officers spoke to the female victim). So too would those factual disputes implicate the false arrest claim in Count IV, which incorporates the lawful-detention element of a violation of Fla. Stat. § 843.02. Furthermore, a secondary factual dispute exists—again assuming Plaintiff's version of the evidence to be correct—about whether Defendant had probable cause to believe that Plaintiff obstructed Defendant's execution of his lawful duty by failing to do more to identify himself under the circumstances (i.e., by only showing his ID through the porch screen in the dark rather than opening the door to permit Defendant's inspection of his ID [*see* ECF No. 48 p. 6]). *See* Fla. Stat. 843.02 (prohibiting a suspect from "resist[ing]," "obstruct[ing]," or "oppos[ing]" an officer in the lawful execution of the officer's legal duty).

Because these genuine disputes of material facts must be decided by a jury, the Court agrees with the Report that it cannot proceed at this time, as Defendant requests, to an ultimate decision

on whether Defendant is entitled to judgment as a matter of law on qualified immunity. None of this is to say that Defendant will not ultimately be entitled to qualified immunity—just that such a determination is not appropriate at this stage.

*Next*, Defendant objects to the Report's conclusion that Plaintiff's no-contest plea to resisting with violence, Fla. Stat. § 843.01, does not bar his false arrest claim in Count IV. That objection also fails. To support this objection, Defendant argues that the Report ignores "O'Leary's argument that probable cause for any offense overrides a false arrest claim" [ECF No. 72 pp. 2–3]. Setting aside the fact that Defendant's Motion for Summary Judgment does not make this particular argument in the context of collateral estoppel [ECF No. 48 pp. 4–7], the Court sees no basis to disturb the Report's conclusion as to collateral estoppel. The Report correctly identifies the difference in elements between Fla. Stat. § 843.01 (which does not require proof of a lawful arrest) versus Fla. Stat. § 843.02 (which does require proof of a lawful arrest). Based on that distinction, the Report properly determines that Plaintiff's prior no-contest plea for a violation of Section 843.01 and the instant action do not present "identical" issues for purposes of collateral estoppel. For essentially the same reasons, the Report then also correctly analyzes the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), again finding no legal bar to Plaintiff's § 1983 suit. That leaves Defendant's current argument—that the Report did not consider Defendant's argument that probable cause for *any* offense overrides Plaintiff's false arrest claim [ECF No. 72 p. 3]. Even accepting that the Report does not specifically address that issue, Plaintiff's no-contest plea to resisting *with* violence in connection with his interactions with Deputy Coccaro was based (according to Plaintiff) on events that occurred *after* his initial arrest by Defendant in the porch area and therefore does not conclusively establish that probable cause existed for Defendant's initial arrest of Plaintiff as alleged in Count IV [ECF No. 71 pp. 12–13]. And, as noted earlier, there is a genuine dispute of material fact as to whether there was probable

cause for Plaintiff's arrest at the time Defendant arrested him inside the screened-in porch. As such, Plaintiff's false arrest claim may proceed despite Plaintiff's no-contest plea in state court.

*Finally*, the Court agrees with the Report's ultimate conclusion that granting Defendant summary judgment on Count VI as a whole is not the correct remedy for Plaintiff's erroneous request in Count VI for money damages under Article 1, Section 12 of Florida Constitution. That said, the Court agrees with Defendant that the standard applicable to a motion to dismiss does not govern here on a motion for summary judgment [ECF No. 72 p. 3 (objecting to ECF No. 71 p. 14 ("At the motion-to-dismiss stage, a complaint need not identify the correct legal theory so long as it alleges facts to support a claim."))]. Plaintiff will not be permitted to seek damages for violations of the Florida Constitution under Count VI. *See Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1191 (S.D. Fla. 2012) (quoting *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. Dist. Ct. App. 2004)) ("In Florida, 'no cause of action exists for money damages for a violation of a state constitutional right.'"), *aff'd*, 568 F. App'x 690 (11th Cir. 2014). But Count VI otherwise may proceed to trial insofar as it seeks damages under the United States Constitution. *See Baez v. LTD Fin. Servs., L.P.,* No. 6-15-CV-1043, 2017 WL 1291070, at *2 (M.D. Fla. Apr. 7, 2017) (noting that entry of summary judgment due to a singular mis-citation to legal authority "would constitute a miscarriage of justice").

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 71] is **ACCEPTED** with the clarification provided above that Plaintiff will not be permitted to seek money damages for a violation of the Florida Constitution on Count VI.

2. Defendant Steven O'Leary's Motion for Summary Judgment [ECF No. 48] is **DENIED**.

11

3. Trial remains scheduled for the two-week trial period, beginning June 20, 2023 [ECF No. 65].

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 17th day of May 2023.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record